IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LAURA M. PENN,

                Plaintiff,

v.                                          CIVIL ACTION NO.  2:12-cv-07311

CITIZENS TELECOM SERVICES
COMPANY, LLC,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Citizens Telecom Services Company, LLC's ("Citizens Telecom") motion for summary judgment.  For the reasons that follow, the Court **GRANTS** the motion [ECF 58].

*I.      BACKGROUND*

A.  *Factual Background*

The facts, taken in the light most favorable to the Plaintiff, are as follows.[1]

Plaintiff, Laura Penn, ("Penn"), is an employee of Defendant Citizens Telecom and works as a sales consultant at a call center in Charleston, West Virginia.  (ECF 8 at 1; ECF 10 at 1; ECF 58-1 at 2.)  During the time relevant to this action, Penn initially worked on a team supervised by Cory Kidder ("Kidder").  (ECF 58-1 at 8; ECF 58-6 at 10–11.)

---

[1] Penn's response to Citizen Telecom's motion for summary judgment included no citations to the record and Penn did not introduce any evidence in opposition to summary judgment.  (ECF 60.)  Notwithstanding such omissions, to the extent that record support could be independently identified for the numerous unsupported factual assertions made by Penn in her response, such assertions have been credited and construed in the light most favorable to Penn.

At some point during the time in which she worked for Kidder, another employee, Sheri Johnson ("Johnson"), told Penn that Kidder "made a comment about [Penn's] breasts in front of several other employees."  (58-1 at 9.)  Specifically, Kidder stated, "What I wouldn't do to get my face in those breasts."  (ECF 58-1 at 10.)  When Kidder made this statement, he was sitting with Johnson and another employee, Casey Jarrett ("Jarrett").  (ECF 58-1 at 10.)  Although Penn was not present (*id*.), she was "very obviously kind of appalled" that Kidder had made such a comment (ECF 58-1 at 9), and she found it humiliating because he did it in front of her coworkers (ECF 58-1 at 16).[2]

Penn did not confront Kidder or otherwise say anything to him about the comment.  (ECF 58-1 at 15.)  At some point after Kidder made the comment, however, Penn indicated to someone with management authority at Citizens Telecom that she wanted a different supervisor and such request was granted.  (ECF 58-1 at 12–16.)  Also at some point thereafter, Kidder was fired. (ECF 58-2 at 2; ECF 58-5 at 17–18.)

After filing this lawsuit, "management . . . started to be more extra attentive" towards Penn.[3]  (ECF 58-1 at 3.)  By way of example, Penn explained in her deposition that once a

---

[2] The Court observes that whether Kidder made such a comment and whether it was reported to Penn are facts that are disputed.  For instance, contrary to Penn's recollection, Johnson did not remember either overhearing Kidder make such a comment, nor did she believe that she told Penn that Kidder had made such a comment.  (ECF 58-2 at 3–5.)  Jarrett also denied ever hearing any such or similar comment and stated that "[Kidder] never talked in a sexual way to [her] about [Penn]."  (ECF 58-3 at 2–4.)  For purposes of considering Citizens Telecom's motion for summary judgment, however, the Court assumes that the comment was made and reported to Penn in the manner in which she testified in her deposition (and that Penn's testimony would itself be admissible) because even if her recollection is accepted as true the facts described herein would still be insufficient for Penn to prevail on the claims she has asserted in this civil action.

[3] Penn has asserted in her First Amended Complaint that the fact that she had made a complaint regarding Kidder's comment was "spread around the workplace, creating great emotional distress for [Penn] and further creating and/or exacerbating an already hostile work environment."  (ECF 4 at 2.)  Penn reiterates similar charges in her response to Citizen Telecom's motion for summary judgment, asserting that "the effects of the utterance were significant and far reaching for [Penn]."  (ECF 60 at 2–3, 6.)  Penn has not provided any evidence herself nor cited any evidence provided by Citizens Telecom that supports this contention, however, and no evidence in support of these assertions has been found.  The closest that could be identified is the above-referenced incident regarding the call with an

2

manager called her into her office and reprimanded her for failing to offer internet service to an elderly customer who did not own a computer.  (ECF 58-1 at 4–5.)  Penn further explained that this manager suggested that they needed to get sales up and there was a lot of sales pressure currently going on.  (ECF 58-1 at 5.)

Kidder did not do anything else towards Penn in a "sexually harassing way" (ECF 58-1 at 15), and Penn indicated during her deposition that the principal basis of her sexual harassment claim "is the single comment that [Kidder] made about putting his head in [Penn's] breasts" (ECF 58-1 at 15–16).  Nonetheless, Penn has also described other instances in which Kidder allegedly behaved inappropriately, which are potentially relevant here and include:

- Kidder once did not say anything to Penn.  (ECF 58-1 at 13.)  Penn stated at her deposition that she did not think that this was in any sexual harassment.  (ECF 58-1 at 13.)

- On another occasion, Kidder said goodbye several times to another female employee. (ECF 58-1 at 13-14.)  Penn stated during her deposition that she did not think such behavior was sexual harassment. (ECF 58-1 at 13.)

- Another time, Kidder received a text message from a female employee who wanted to meet him for drinks, and Kidder asked Jarrett what he should do.  (ECF 58-1 at 14.)  Penn stated that she thought such behavior was inappropriate, but "it has nothing to do with me personally having a complaint."  (ECF 58-1 at 14.)

- Kidder once had a conversation with a female Frontier employee about a one-night stand that she had had.  (ECF 58-1 at 14.)  Penn stated at her deposition that this episode was inappropriate, but not part of a hostile work environment for her.  (ECF 58-1 at 14.)

Additionally, at some point Penn appears to have learned that another employee, Kimberly Whittington ("Whittington"), had previously filed a complaint against Kidder accusing

---

elderly customer, and a statement from Regina Burton ("Burton") that she had "heard rumors" that "sexual harassment between [Penn] and [Whittington] is basically what caused [Kidder] to get fired."  (ECF 58-5 at 18.)

3

him of sexual harassment.[4]  (ECF 58-1 at 15; ECF 58-7 at 20.)  Whittington's complaint, or at least the conduct underlying it, appears to have arisen at some point during 2011, likely in either the spring of 2011 or between August and November of 2011.  (ECF 58-4 at 3; 58-5 at 2; ECF 58-6 at 3, 8–9; ECF 58-7 at 4, 16; ECF 58-8 at 2.)  Penn did not begin working on Kidder's team until the beginning of 2012.  (ECF 58-1 at 8; ECF 58-6 at 2–3.)

B.  *Procedural Background*

Penn initially filed a "complaint" with the Equal Employment Opportunity Commission, which was rejected on August 6, 2012.  (ECF 4 at 3.)  Thereafter, on November 2, 2012, Penn filed her Complaint in this Court naming Frontier Communications of West Virginia, Inc. as defendant.  (ECF 1 at 1.)

On February 5, 2013, Penn filed her First Amended Complaint naming as defendant "Citizens Telecommunications Company of West Virginia, a West Virginia Corporation dba Frontier Communications of West Virginia, Inc." (ECF 4 at 1.)  Penn's First Amended Complaint was otherwise substantially identical to her Complaint.  (ECF 1; ECF 4.)

Later, on March 7, 2013, the parties filed a stipulation substituting Citizens Telecom as defendant for Frontier Communications and further stipulating that Citizens Telecom is Plaintiff's employer and would be the Frontier corporate entity liable to Plaintiff, as compared to any affiliated entities, in the event that Plaintiff prevailed in this civil action.  (ECF 10 at 1.)

---

[4] Penn has not actually cited evidence in the record that such a complaint was even made, let alone under what circumstances.  (ECF 60 at 3-6.)  The deposition of six other Citizens Telecom employees, however, support the conclusion that a complaint was made—although all six indicated that Whittington actually initiated and maintained a voluntary relationship with Kidder and that there was no harassment.  (ECF 59 at 2; ECF 58-4; ECF 58-5; ECF 58-6; ECF 58-7; ECF 58-8.)  To the extent that Penn has challenged these witnesses' credibility, the Court observes that she again did so without citation or production of evidence.  But ultimately such credibility challenges are irrelevant here—for purposes of summary judgment the Court will presume that a sexual harassment complaint was made against Kidder by Whittington, and that such allegations were based on harassing conduct that occurred.

After discovery was completed (ECF 18 at 1-2), Citizens Telecom filed its motion for summary judgment (ECF 58).  Penn filed a response (ECF 60), to which Citizens Telecom replied (ECF 61).

## II.   CHARACTERIZING THE CLAIMS IN THE FIRST AMENDED COMPLAINT

Because there has been some confusion regarding what causes of action are asserted in Penn's First Amended Complaint, the Court finds it necessary to first review that pleading.  For the reasons that follow, the Court concludes that Penn's First Amended Complaint is properly read as asserting four causes of action.

The first sentence of the First Amended Complaint states that it is brought, as pertinent here, "pursuant to 42 U.S.C. Section 2000, et. seq., . . . [and] arises out of the [Citizens Telecom's] allowance of a hostile work environment and sexual harassment of [Penn] . . . ." (ECF 4 at 1.)  Immediately thereafter, the First Amended Complaint states that "[t]his Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343, 42 U.S.C 2000 et seq., etc." (ECF 4 at 1.)  The First Amended Complaint then proceeds to state facts in support of a "hostile work environment."  (ECF 4 at 2-3.)  Accordingly, the First Amended Complaint appears to invoke this Court's jurisdiction on the basis of raising a hostile work environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[5]

The First Amended Complaint also includes a section entitled "State Law Claims," in which Penn states four additional "counts":  (1) "sexual harassment / hostile work" pursuant to West Virginia Code § 5-11-1 *et seq.* and West Virginia Code of State Regulations § 77-4-2.2 (ECF 4 at 3); (2) "vicarious liability" (ECF 4 at 3–4); (3) "insulting words" as defined by West

---

[5] Additionally, when Penn filed her original Complaint, she also submitted a Civil Cover Sheet in which she asserted that the basis of this Court's jurisdiction was a federal question and listed "42 U.S.C. [§] 2000" as the statute under which the complaint was filed.  (ECF 1-1 at 1.)

Virginia Code § 55-7-2 (ECF 4 at 4); and (4) "outrageous conduct / intentional infliction [of emotional distress]" (ECF 4 at 5).

In its motion for summary judgment, however, Citizens Telecom moved "for summary judgment as against [Penn's] Complaint in its entirety," stating that "Plaintiff has asserted *three* causes of action:  (1) hostile work environment sexual harassment, (2) intentional infliction of emotional distress, and (3) violation of West Virginia's 'insulting words statute[']."  (ECF 58 at 1.) (Emphasis added.)  Additionally, in its accompanying memorandum of law, Citizens Telecom reiterated its conclusion that Penn had raised "*three* causes of action." (ECF 59 at 15.) (Emphasis added.)   With respect to Penn's "hostile work environment sexual harassment" cause of action, Citizens Telecom's memorandum addressed only such a claim made under the West Virginia Human Rights Act, W. Va. Code, § 5-11-1, *et seq.* ("WVHRA").  (ECF 59 at 6–10.)

In light of the discrepancy regarding the existence of a Title VII claim, the Court directed the parties that unless otherwise advised the Court would construe Citizen Telecom's motion for summary judgment as also challenging Penn's Title VII claim, to the extent that such a claim was made.  (ECF 65.)  On February 18, 2014, Citizen's Telecom responded and asserted that because the federal law of sexual harassment closely parallels that of West Virginia, to the extent that Penn's First Amended Compliant pleaded a Title VII claim, that claim should be dismissed for the same reasons as Penn's WVHRA hostile work environment claim.  (ECF 66 at 1–3.) Penn did not respond.

Although Penn's First Amended Complaint is not a model of clarity, the Court finds that in light of her citations of "42 U.S.C. § 2000" and invocation of this Court's federal question jurisdiction, Penn sought to assert a claim under Title VII.

With respect to her state law claims, the Court agrees with Citizens Telecom's characterization of those claims, namely that Penn has stated claims of sexual harassment under West Virginia law, a violation of West Virginia's "insulting words" statute, and intentional infliction of emotional distress. (ECF 58 at 1; ECF 59 at 1.)

To the extent that Penn has asserted a separate "state law claim" or "count" of "vicarious liability"[6] (ECF 4 at 3–4), however, the Court observes that vicarious liability is a theory of liability by which Penn may seek to hold Citizens Telecom liable for the actions of its employee, Kidder. It is not a separate cause of action. *See McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011) ("Vicarious liability is, of course, not an independent cause of action, but rather a theory of assigning liability.").

*Hanlon v. Chambers*, 464 S.E. 2d 741 (1995), on which Penn relies (ECF 4 at 4), is not to the contrary. In *Hanlon*, the West Virginia Supreme Court of Appeals held that the WVHRA provided for a cause of action against employers by supervisory employees who claim to have been sexually harassed by subordinate employees. Syl. Pt. 9, 464 S.E.2d at 745, 748–50. In that sense, *Hanlon*'s principal holding is factually inapposite to Penn's claim. Moreover, in that portion of the decision in which the Supreme Court of Appeals discussed an employer's potential liability, it did so as a theory of liability for when an employer could be accountable for a hostile work environment under the WVHRA:

> Where an agent or supervisor of an employer has caused, contributed to, or acquiesced in the harassment, then such conduct is attributed to the employer, and it can be fairly said that the employer is strictly liable for the damages that result. When the

---

[6] Because Penn did not address this argument in her response to Citizens Telecom's motion for summary judgment, the only substantive argument that the Court has available to it regarding this claim is Penn's statement of this claim in her First Amended Complaint, the substance of which reads in full: "In that the person conducting the harassment was a supervisor of the plaintiff, the defendant is vicariously liable under *Hanlon v. Chambers*, 195 W. Va. 99, 464, S.E. 2d 741."

> source of the harassment is a person's co-workers and does not include management personnel, the employer's liability is determined by its knowledge of the offending conduct, the effectiveness of its remedial procedures, and the adequacy of its response.

*Hanlon*, 464 S.E.2d at 750.

Accordingly, the Court will construe Penn's assertion of a "state law claim" or "count" of "vicarious liability" against Citizens Telecom a theory of Citizens Telecom's liability for Penn's hostile work environment claim under the WVHRA.

In sum, the Court concludes that Penn's First Amended Complaint asserts four causes of action: (1) a hostile work environment claim under Title VII; (2) a hostile work environment claim under the WVHRA; (3) a violation of West Virginia's insulting words statute; and (4) the intentional inflection of emotional distress under West Virginia law.

### III.   LEGAL STANDARD

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  *See* Fed. R. Civ. P. 56(e).  A court must neither resolve disputed facts nor weigh the evidence.  *Russell v. Microdyne Corp*., 65 F.3d 1229, 1239 (4th Cir. 1995).  Nor may a court make determinations of credibility.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light

most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The moving party bears the initial burden of showing that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23. "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718–19 (4th Cir. 1991). The non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995). Moreover, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56, advisory committee notes, 1963 Amendment, Subdivision (e). In order to properly assess "proof" the party resisting a summary judgment motion must support his factual assertions by: 1) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or 2) showing that the materials cited establish the presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support proffered facts.  *See* Fed. R. Civ. P.  56(c)(1)(A–B). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Fed. R. Civ. P.  56(c), the Court may, *inter alia*, consider any unsupported or unaddressed facts undisputed and grant summary judgment if the summary judgment motion, its supporting materials, and the undisputed facts show the movant is entitled to relief. *See* Fed. R. Civ. P.  56(e).

## IV.    DISCUSSION

As noted above, Penn's response to Citizen Telecom's motion for summary judgment contained absolutely no citation to materials in the record, and Penn has not introduced any evidence in support of her claims.  *See* Fed. R. Civ. P. 56(c), (e).  To the extent that Penn's response simply makes unsupported and conclusory assertions, the Court observes that such statements by counsel are obviously not facts or evidence.  *See, e.g.*, *Greensboro Prof'l Firefighters Ass'n,* 64 F.3d at 967 (conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment); *Ennis* 53 F.3d at 62 ("[m]ere unsupported speculation . . .  is not enough to defeat a summary judgment motion"); *Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 780, 793 (D.S.C. 2013) *aff'd sub nom. Midland Mortg. Co. v. Wells Fargo Bank NA*, 13-1370, 2013 WL 5814682 (4th Cir. Oct. 30, 2013) (observing that where plaintiff presented information "mostly through the statements set forth in its brief, without supporting evidence, . . . such statements are generally not enough to survive summary judgment" and collecting cases explaining that statements by counsel are not evidence).

Moreover, to the extent that Penn responded to the legal arguments raised in Citizen Telecom's motion, Penn only argued in support of her state law hostile work environment claim. (ECF 60.)   Her response was silent as to her insulting words and intentional infliction of

emotional distress claims, and Penn did not respond to the Court's Order explaining that it would address Citizen Telecom's motion for summary judgment as also challenging Penn's Title VII claim.

Notwithstanding these omissions, the Court still has an independent duty to examine the merits of Citizens Telecom's summary judgment motion. *See generally Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (explaining that the failure to respond to a motion for summary judgment does not automatically establish that the moving party is entitled to judgment as a matter of law and that "the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law").  Accordingly, the Court considers each of Penn's claims in turn.

### A.  Title VII Claim

#### 1.  Legal Framework

Title VII make makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1).  "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001).

To establish a hostile work environment based on sexual harassment, a plaintiff-employee must prove that:  (1) the conduct was unwelcome; (2) it was based on the plaintiff's sex; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer.  *Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013).

11

With respect to the "severe or pervasive" element, which is most relevant here, the Fourth Circuit has observed:

> The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 333 (4th Cir. 2003) (en banc) (citing [*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 at 21–22 (1993)]).  First, the plaintiff must show that [s]he "subjectively perceive[d] the environment to be abusive."  *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367.  Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive.
>
> This objective inquiry "is not, and by its nature cannot be, a mathematically precise test."  *Harris,* 510 U.S. at 22, 114 S.Ct. 367.  Rather, when determining whether the harassing conduct was objectively "severe or pervasive," [a court] must look "at all the circumstances," including [1] "the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367; *Ocheltree,* 335 F.3d at 333.

*E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  Elsewhere, the Fourth Circuit has also indicated that another factor to consider is the disparity in power between the harasser and the victim.  *See Ziskie v. Mineta*, 547 F.3d 220, 227−28 (4th Cir. 2008).

In order to be actionable, the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment."  *Sunbelt Rentals*, 521 F.3d at 315 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)).  Accordingly, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test."  *Id.*  Indeed, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Id.*  (quoting *Faragher*, 524 U.S. at 788).

Additionally, with respect to an employer's liability for a hostile work environment, the Fourth Circuit has explained:

> Whether and under what standard an employer may be held liable for sexual harassment depends on whether the harasser was a supervisor or merely a co-worker and on whether the plaintiff suffered a tangible employment action. If the plaintiff's claim is based on the actions of her supervisor, the employer is subject to vicarious liability. If the plaintiff did not suffer a tangible employment action, the employer has available to it an affirmative defense that may protect it from liability or damages.

*Whitten v. Fred's, Inc.*, 601 F.3d 231, 243 (4th Cir. 2010) *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013).

### 2.  *Relevant Facts*

The parties appear to agree, as does the Court, that summary judgment evidence exists in the form of Penn's deposition that Kidder made a comment about Penn's breasts in the presence of Johnson and Jarrett and that this comment was thereafter communicated to Penn by Johnson. (ECF 58-1 at 9−10; ECF 59 at 10; ECF 60 at 2−3; ECF 61 at 6.)

With respect to Whittington's complaint against Kidder, as noted above, the record is exceptionally sparse regarding Plaintiff's unsupported assertions about that complaint and the circumstances surrounding it.   Nonetheless, the Court assumes for purposes of summary judgment that Whittington's complaint was made and that her allegations of sexual harassment against Kidder were true.  That said, Penn has not alleged or introduced evidence suggesting that she was affected by or aware of the harassment alleged by Whittington, or that she was even aware of Whittington's complaint until after she had made her own complaint.  (ECF 60 at 1−2.) Indeed, Penn did not even work on Kidder's team during the period in which the conduct giving rise to Whittington's complaint appears to have occurred.  (ECF 58-1 at 8; ECF 58-4 at 3; 58-5 at 2; ECF 58-6 at 2−3, 8−9; ECF 58-7 at 4, 16; ECF 58-8 at 2.)  That is, of course, not to say that evidence of Whittington's complaint is entirely irrelevant, but rather that it is arguably probative to support Penn's assertion that she herself was subjected to a hostile work environment by

Kidder.  *See Ziskie*, 547 F.3d at 225 (explaining that evidence about how other employees were treated in the same workplace can be probative of whether the environment was indeed a sexually hostile one, even if the plaintiff did not witness the conduct itself).

Penn indicated in her deposition that apart from the asserted sexual harassment charge made by Whittington, Kidder's comment about her breasts was the basis of her sexual harassment claim.  (ECF 58-1 at 15−16.)  Although Penn discussed other incidents of potentially inappropriate behavior by Kidder, she also acknowledged in her deposition that besides the comment about her breasts Kidder never did anything else towards her in a sexually harassing way (ECF 58-1 at 14−15), and she explicitly explained that she did not believe that these incidents amounted to sexual harassment and that, therefore, none of these incidents were part of her sexual harassment claim (ECF 58-1 at 13−14).

To the extent that Penn has alleged that there were other "significant and far-reaching" effects from the comment related to Penn's work condition (ECF 60 at 2−3), Penn has neither cited nor introduced any evidence to support that allegation.  *See Greensboro Prof'l Firefighters Ass'n,* 64 F.3d at 967 (conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment); *Ennis* 53 F.3d at 62 ("[m]ere unsupported speculation . . .  is not enough to defeat a summary judgment motion"); *Midland Mortg. Corp.* 926 F. Supp. 2d at 793 (statements of counsel in a brief are not evidence generally sufficient to survive summary judgment).

In sum, for purposes of summary judgment the undisputed factual support for Penn's Title VII claim is as follows:  Kidder, who was at the time Penn's supervisor (ECF 58-1 at 8; ECF 58-6 at 10−11), said in front of Johnson and Jarrett, "What I wouldn't do to get my face in [Penn's] breasts."  (ECF 58-1 at 10.)  Penn was not present when the comment was made (*id.*),

14

but Johnson told her about it.  (ECF 58-1 at 9.)  Penn was "appalled" and found the comment "humiliating."  (ECF 58-1 at 9, 16.)  Kidder had also been the subject of a sexual harassment claim by another employee (ECF 58-7 at 20), although Penn did not work for Kidder at the time during which that conduct occurred (ECF 58-1 at 8; ECF 58-4 at 3; 58-5 at 2; ECF 58-6 at 2–3, 8–9; ECF 58-7 at 4, 16; ECF 58-8 at 2).

### 3.   Analysis

Turning to the substance of Penn's Title VII claim, the parties agree that Kidder was Penn's supervisor and that Citizens Telecom could therefore be liable to Penn under a theory of vicarious liability.[7]  Citizens Telecom argues that the facts here fall short of satisfying the third, "severe or persuasive," element of her Title VII claim, however, and that therefore Penn's claim is deficient and should be dismissed on summary judgment.

The Court has no trouble finding that the first two elements of Penn's Title VII claim are met:  Penn clearly found Kidder's comment unwelcome (ECF 58-1 at 9, 16), and the comment was clearly of a sexual nature intrinsically related to her sex (ECF 58-1 at 9–10).  With respect to the third element, the Court finds that Penn subjectively perceived the comment and environment as abusive and hostile.  (ECF 58-1 at 9, 16.)  The Court agrees with Citizens Telecom, however, that Penn cannot successfully demonstrate that the complained-of unwelcome conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive.  *Sunbelt Rentals*, 521 F.3d at 315; *see also Crocket*, 717 F.3d at 354.

---

[7] The Court observes that it is not clear that the harassment Penn complains of culminated in a tangible employment action that would definitively subject Citizens Telecom to vicarious liability.  *See Crockett*, 717 F.3d at 354–57 (discussing vicarious liability of an employer under Title VII).  Citizens Telecom has not asserted an affirmative defense in its motion for summary judgment (ECF 58, 59) or it supplemental response to the Court's Rule 56(f) Order (ECF 66), however, and because the Court concludes that Penn has otherwise failed to satisfy the severe or pervasive element of her Title VII claim, the Court finds it unnecessary to reach this question.

With respect to the frequency of the discriminatory conduct, generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Shields v. Fed. Express Corp.*, 120 F. App'x 956, 961 (4th Cir. 2005) (internal quotations and citation omitted). Penn, however, has advanced only Kidder's isolated comment as evidence supporting her claim of a hostile work environment. Additionally, to the extent that Whittington made a prior complaint against Kidder, as discussed above Penn has not alleged or introduced evidence that she was present for or otherwise experienced any such harassment directed towards Whittington. Rather, this fact lends nominal support to Penn's claim that the environment was hostile, but it does not add to the unwelcome conduct that Penn herself experienced and the Court cannot conclude that it establishes that Penn herself was subjected to unwelcome conduct that was severe or pervasive. Accordingly, this factor weighs against Penn. *See Herbert v. Olympia Hotel Management LLC*, No. 3:13-cv-00015, 2014 WL 414227, at *4–5 (Feb. 4, 2014) (explaining that "precedent is very clear that incidents [of sexual harassment] must be numerous and continuous in order to be deemed severe and pervasive" and concluding that plaintiff was incapable of showing that the unwelcome conduct was sufficiently severe or pervasive to alter the plaintiff's conditions of employment where the plaintiff presented evidence of only one incident of harassment); *compare Okoli v. City of Baltimore*, 648 F.3d 216, 217, 217–22 (4th Cir. 2011) (reversing district court's grant of summary judgment for employer where plaintiff suffered twelve incidents of sexual harassment over the course of just four months, including when her boss forcibly kissed her, fondled her leg, propositioned her, asked sexually explicit questions, and described to her sexual activities he wished to perform).

With respect to the severity of the comment, the Court has difficulty concluding that Kidder's statement, while crude and demeaning, rose to the level of severity for which Title VII

provides redress.  Accordingly, this factor also weighs against Penn.  *See Walker v. Mod-U-Kraf Homes, LLC*, ___ F. Supp. 2d ___, ___, 2013 WL 6729525, at *5, 9 (W.D. Va. Dec. 19, 2013) (concluding that a co-workers comment to plaintiff's boyfriend that he should go up to where plaintiff was working if he wanted to receive oral sex and another occasion in which the co-worker repeatedly said "wiener in your mouth, wiener in your mouth" to plaintiff and her boyfriend were not sufficiently severe); *see also Sunbelt Rentals*, 521 F.3d at 315 (explaining that isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir. 1996) (observing that "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace").

With respect to whether the conduct was physically threatening or humiliating, or a mere offensive utterance, Penn has put forward no evidence that Kidder's comment was made in a manner that was threatening.  Indeed, she was not even present when it was made.  Rather, the comment more clearly falls into the category of an offensive utterance such that this factor also does not counsel in Penn's favor.  *See Okoli*, 648 F.3d at 220–221 & n.7 (distinguishing the importance of the physical contact plaintiff suffered, which included three incidents of fondling plaintiff's leg under a table and forcible kissing); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 239 (4th Cir. 2000) (observing that supervisor's behavior was "often threatening" and that he would stand over plaintiff's cubicle and bark orders at her, and once grabbed the handles of plaintiff's chair and "spun her around to face him, . . . looked her over, and stated . . . that he could 'see why a man would slit a woman's throat'").

With respect to whether the comment unreasonably interfered with Penn's work performance, Penn has not introduced any significant evidence that the comment interfered with

her work performance. As discussed above, to the extent that Penn has argued that the comment had "far-reaching and significant effects," such speculation and assertions by counsel, unsupported by evidence, are not facts. *See Greensboro Prof'l Firefighters Ass'n,* 64 F.3d at 967; *Ennis* 53 F.3d at 62; *Midland Mortg. Corp.* 926 F. Supp. 2d at 793. Additionally, Penn's request to transfer to a different supervisor was granted. (ECF 58-1 at 12–16.) And, to the extent that Penn claims that she was reprimanded by her supervisor for not offering an elderly customer internet service (ECF 58-1 at 3–5), even assuming that such reprimand was related to Penn's complaint about Kidder's comment, Penn has neither alleged nor produced evidence that this particular incident impacted her work performance.

Finally, with respect to the disparity in power between the harasser and the victim, Kidder was Penn's supervisor at the time he made the comment so this factor initially counsels in favor of Penn. However, there is very little other evidence regarding this relationship in the record. It appears that Kidder was only Penn's supervisor for a brief period of time before the comment was made, and after learning of the comment Penn requested and was granted a transfer. Accordingly, the Court declines to rely exclusively on the fact that Kidder was Penn's supervisor to conclude that the disparity in power was so pronounced that it necessarily made the comment so severe as to alter the conditions of Penn's employment. *See Okoli*, 648 F.3d at 221 (explaining that there was a significant disparity in power where harasser was "a political appointee who sat in the Mayor's cabinet and headed an agency with more than a hundred employees, and plaintiff was a new secretary whose job required her to have a lot of one-on-one contact with [the harasser, who was her boss]"); *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 696-97 (4th Cir. 2007) (observing that the harasser was a 45 year-old man and the coach of the 17 year-old plaintiff-victim's college soccer team and had tremendous power and influence

of his players); *see also Ziskie*, 547 F.3d at 228 (discounting the one or two instances of supervisor harassment, where most of complained-of harassment was by co-workers, and stressing that the supervisor behavior did not "remotely resemble the repeated harassing conduct by someone in a position of authority [described in other Fourth Circuit cases]").

In sum, the facts presented here do not rise to the level of unwelcome conduct that is sufficiently severe and pervasive to state a claim under Title VII. *See Celotex*, 477 U.S. at 322 (explaining that Rule 56(c) mandates entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case).

This conclusion is further supported by the numerous cases in which courts have found that a hostile work environment did not exist where the alleged harassment was more substantial than that presented here. *See Walker*, 2013 WL 6729525 at *7–9 (collecting cases illustrating the magnitude of conduct found to be sufficiently severe or pervasive to constitute actionable sexual harassment under Title VII).

Accordingly, the Court concludes that Penn's Title VII claim based on hostile work environment sexual harassment fails as a matter of law, and that Citizens Telecom is entitled to summary judgment on that claim.

## B.  State Law Claims

Citizens Telecom also moves for summary judgment on Penn's state law claims.  (ECF 58 at 1; ECF 59 at 1; ECF 66.)  However, having found summary judgment to be appropriate on Penn's only federal claim, which claim is the basis of the Court's jurisdiction,[8] the Court must

---

[8] As discussed above, *supra* Part II, Penn explicitly invoked this Court's federal question jurisdiction in her First Amended Complaint, as well as in the Civil Cover sheet filed with her original Complaint.  (ECF 1-1 at 1; ECF 4 at 1–2.)  Additionally, although Penn asserted that she was a citizen of West Virginia when she filed her original Compliant (ECF 1-1 at 1), nothing has been identified in the record with respect to Citizens Telecom's corporate citizenship (ECF 1-1; ECF 4; ECF 8; ECF 11; ECF 58 and exhibits; ECF 59; ECF 60; ECF 61; ECF 66).  Accordingly, the Court cannot conclude that diversity jurisdiction exists as an independent jurisdictional basis, nor has Penn asserted diversity jurisdiction.

first determine whether to exercise or decline to exercise supplemental jurisdiction over Penn's remaining state law claims. *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see also Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 206 (E.D.N.Y. May 6, 2010) (evaluating whether to retain jurisdiction over state law claims after determining that plaintiff's federal claims did not survive summary judgment).

District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan*, 58 F.3d at 110. The Court may decline to exercise supplemental jurisdiction over a claim for reasons listed in 28 U.S.C. § 1367(c). *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,* 554 F.3d 595, 601–02 (5th Cir.2009); *see also Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010) (applying section 1367(c) factors in a review of a district court's decision to exercise jurisdiction in a removed action). Section 1367(c) provides that the district court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

In addition to these statutory considerations, other "factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110; *Arrington*, 369 F. App'x at 423-24.

Here, having found summary judgment appropriate on Penn's Title VII claim, the Court has dismissed all claims over which it has original jurisdiction. *See* § 1367(c)(3). The Court

concludes, however, that on balance the above-listed factors favor exercising jurisdiction over Penn's remaining state law claims.

Specifically, Penn's state law claims relate to precisely the same conduct as her federal claim, and the parties have already conducted extensive discovery in this matter.  Penn also voluntarily chose to file this civil action with *all* of her claims in federal court.  Moreover, Penn has done little to defend these claims against summary judgment, and dismissing the remaining claims could permit Penn to potentially present them anew to a state court, effectively giving her a second opportunity to litigate these claims to the prejudice of Citizens Telecom.  Finally, Penn's claims do not raise novel or complex issues of West Virginia law, but are relatively straightforward statutory and tort law causes of action.

Although deeply sensitive to concerns of comity, under these circumstances the Court finds that none of the statutory factors provided in Section 1367(c) so strongly counsel in favor of declining to exercise jurisdiction and that the interests of judicial economy, convenience, and fairness to the parties are best served by the Court exercising jurisdiction to resolve Penn's remaining state law claims.

### 1. *WVHRA*

Penn contends that "[t]he actions of the defendant constitute sexual harassment and/or a hostile work environment within the meaning of [the WVHRA] and West Virginia CSR 77-4-2.2." (ECF 4 at 3.)  Citizens Telecom argues that it is entitled to summary judgment because the undisputed facts fail to satisfy the required showing that the complained-of conduct was severe or pervasive.  (ECF 59 at 6.)  In response, Penn argues that summary judgment is inappropriate because although "the conduct at the heart of [her] complaint to management was a single

comment, the effects of the comment were far reaching and pervasive" and sufficient for her WVHRA claim to survive summary judgment.  (ECF 60 at 2-3, 6–7.)

As the West Virginia Supreme Court of Appeals has observed, similar standards for evaluating hostile work environment claims have been adopted and applied in both federal and state courts.  *Erps v. W. Va. Human Rights Comm'n*, 680 S.E.2d 371, 379 (2009).

Similar to the standard governing Title VII claims, to establish a claim for sexual harassment under the West Virginia Human Rights Act, W. Va. Code, § 5-11-1, *et seq.*, based upon a hostile or abusive work environment a plaintiff-employee must prove that:  (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer.  Syl. Pt. 5, *Hanlon v. Chambers*, 464 S.E.2d 741, 745 (1995); *see also* West Virginia Code of State Regulations § 77-4-2.2 (providing that verbal or physical conduct of a sexual nature constitutes sexual harassment when, as relevant here, "[s]uch conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment").

Also similar to Title VII, the Supreme Court of Appeals has noted that "[w]hether an environment is hostile or abusive can be determined only by considering all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Erps*, 680 S.E.2d at 379 (quoting *Garcez v. Freightliner Corp.*, 72 P.3d 78, 85-86 (Or. 2003)).

Additionally, West Virginia Code of State Regulations § 77-4-1 *et. seq.*, sets forth guidelines for interpreting the WVHRA's prohibition against discrimination on the basis of sex by means of sexual harassment. *See* W. Va. Code R. § 77-4-1. Specifically relevant here, section 77-4-2.4 provides guidance as to whether alleged sexual harassment in a particular case is sufficiently severe or pervasive. Factors that may be considered include whether the harassing conduct involved unwelcome physical touching, whether it involved verbal abuse of an offensive or threatening nature; whether it involved unwelcome and consistent sexual innuendo or physical contact, and the frequency of the unwelcome and offensive encounters. § 77-4-2.4. The regulation further provides that a person who has been harassed on an isolated basis may offer evidence of harassment suffered by other employees as proof that the harassment was pervasive or severe. *Id.*

In light of the marked similarities between the federal and state standards, for the reasons discussed above with respect to Penn's Title VII claim, the Court concludes that Penn's WVHRA hostile work environment claim also fails on the third element because the undisputed facts do not support the conclusion that the unwelcome conduct of which Penn complains was sufficiently severe or pervasive to alter her conditions of employment and create an abusive work environment.

Additionally, as unique to Penn's WVHRA claim, none of the factors in West Virginia Code of Regulations § 77-4-2 compel a contrary conclusion. The complained of conduct, that is Kidder's comment, did not involve physical touching or verbal abuse of an offensive or threatening nature. The comment was a single incident, not a frequent or consistent occurrence. To the extent that Whittington also made a claim against Kidder, such may provide some additional evidence of harassment but the Court cannot find that it is sufficient to establish that

such harassment was pervasive or severe. Further, Penn has not offered any other evidence of sexual harassment suffered by herself or other employees. In consideration of these factors, the Court finds that the complained-of harassment was not pervasive or severe under the framework articulated by the Supreme Court of West Virginia and the West Virginia Code of Regulations.

Accordingly, the Court concludes that Citizens Telecom is entitled to summary judgment on Penn's WVHRA hostile work environment claim.

### 2. Insulting Words

Next, Penn asserts that "[t]he words stated by [Citizen Telecom's] employee, Cory Kidder, constitute 'Insulting Words', as are defined by the Official Code of West Virginia, § 55-7-2, as such words and the manner in which they were spoken, are construed as insults and tend to violence and breach of the peace." (ECF 4 at 4.) Citizens Telecom moves for summary judgment on this claim on the basis that the words in question are not covered by the statute. (ECF 59 at 11–12.) Plaintiff did not respond to the argument. (ECF 60.)

Section 55-7-2 (1923), provides, in pertinent part:

> All words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, shall be actionable.

Although section 55-7-2 appears to have its origins in a Virginia statute first written in 1810 as an anti-dueling statute, the West Virginia Supreme Court of Appeals has discussed its meaning in the modern era, explaining that:

> [Section 55-7-2] is intended to supplement common law actions for libel and slander and not to supplant them. Consequently, it is intended to do two things: first, it provides a cause of action for insulting words which are communicated only to the victim of the insult without the need for further publication; second, it provides a cause of action for insulting words which tend to violence and to a breach of the peace.

Syl. Pt. 1, *Mauck v. City of Martinsburg*, 280 S.E.2d 216, 217–219 (W. Va. 1981). Insulting words which tend to violence and to a breach of the peace include "vituperative epithets" and "traditional racial slurs." *Mauck*, 280 S.E.2d at 219.

Here, Penn invokes the second cause of action articulated by the *Mauck* court, namely, that Kidder's comment constituted insulting words which tend to violence and to a breach of the peace. Kidder's comment, however, while a crude sexual remark, was neither a vituperative epithet nor traditional racial slur of the type which the Supreme Court of Appeals have held to be actionable under section 55-7-2. *See Mauck*, 280 S.E.2d at 219; *compare with Covey v. Fields*, 354 S.E.2d 413, 414 (W. Va. 1987) (holding that plaintiff "tend[ed]" to make out a prima facie case under section 55-7-2 where "testimony was given to the effect that [defendant] had accused [plaintiff] of having 'a yellow streak' up his back 'a foot wide', and that [defendant] threatened to either pound or grind [plaintiff's] head into the sidewalk upon their next meeting . . . , accused [plaintiff] of participating in homosexual and Oedipal dalliances, and attributed to him a canine lineage . . . [and] impugned [plaintiff's wife's] chastity and virtue in a gross manner"); *see also Cunningham v. Martin*, 294 S.E.2d 264, 266–67 (W. Va. 1982) (finding error in a jury instruction regarding section 55-7-2 where words were, overall, not vituperative epithets or racial slurs).

Accordingly, the Court concludes that Citizens Telecom is entitled to summary judgment on Penn's insulting words claim.[9]

---

[9] The Court observes that to the extent that section 55-7-2 concludes by stating that "[n]o demurrer shall preclude a jury from passing thereon," such language does not preclude summary judgment on this claim. *See Kinney v. Daniels*, 574 F. Supp. 542, 547 & n.32 (S.D. W. Va. 1983) (Haden, J.) (concluding that the defendants were entitled to summary judgment on plaintiff's claim under section 55-7-2, notwithstanding this provision) (citing *Guthrie v. Great Am. Ins. Co.*, 151 F.2d 738 (4th Cir. 1945)); *see also Rice v. Cmty. Health Ass'n.*, 40 F. Supp. 2d 783, 787 (S.D. W. Va. 1998) (granting summary judgment on a claim under section 55-7-2).

### 3. *Intentional Infliction of Emotional Distress*

Finally, Penn contends that "[t]he Actions [sic] of [Citizens Telecom] and/or it's [sic] supervisory employees in exposing the plaintiff to sexual harassment, and in it's [sic] follow-up conduct is outrageous under West Virginia Law and constitutes an intentional infliction of emotional distress . . . ." (ECF 4 at 5.) Citizens Telecom argues that there is no genuine issue of material fact and the facts do not support a claim of intentional infliction of emotional distress. (ECF 59 at 14-15.) Penn's response contains no argument in support of this claim. (ECF 60.)

In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;
>
> (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;
>
> (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and,
>
> (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."

Syl. Pt. 7, *Hatfield v. Health Mgmt. Assocs. of W. Virginia*, 672 S.E.2d 395, 398–99 (W. Va. 2008) (citing Syl. Pt. 3, *Travis v. Alcon Laboratories, Inc.,* 504 S.E.2d 419 (W. Va. 1998)). With respect to the first element, "'liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Travis*, 504 S.E.2d at 425 (quoting Restatement of Torts (Second) § 46).

"In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or

26

reckless inflection of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."  Syl. Pt. 4, *Travis*, 504 S.E.2d at 421, 428.

Additionally, an employer may be held liable for a supervisor's outrageous actions committed within the scope of employment, and an employer may be held liable for causing, contributing to, or acquiescing to the commission of outrageous conduct occurring during the course of employment.  Syl. Pts. 5, 6, *Travis*, 504 S.E.2d at 421, 432.

To the extent that Penn seeks to hold Citizens Telecom vicariously liable for Kidder's conduct, the Court finds that his comment about Penn's breasts could not reasonably be considered so extreme and so outrageous as to constitute intentional or reckless inflection of emotional distress as a matter of law.  *See* Syl. Pts. 4-6, *Travis*, 504 S.E.2d at 421, 428, 432. Similarly, to the extent that Penn has also introduced evidence of other incidents in which Kidder acted inappropriately towards her or other employees—for instance, asking Jarrett how he should respond to a text from another female employee and discussing another female employee's one-night stand (ECF 58-1 at 14)—none of these incidents either individually or collectively amount to conduct that could reasonably be considered outrageous.  *See id*.  The Court further observes that Penn herself stated in her deposition that she did not find any of these incidents to be sexual harassment or to form part of her sexual harassment claim, just that some were "inappropriate." (ECF 58-1 at 14.)  *See id*. at 425.

To the extent that Penn seeks to hold Citizens Telcom liable for outrageous "follow-up conduct" to the alleged sexual harassment (ECF 4 at 5), the Court again observes that Penn has introduced no facts of such alleged follow-up conduct and that speculation and conclusory and

unsupported assertions by counsel are not evidence.  *See Greensboro Prof'l Firefighters Ass'n,* 64 F.3d at 967; *Ennis* 53 F.3d at 62; *Midland Mortg. Corp.* 926 F. Supp. 2d at 793.

The only incident with support in the record that could support this theory of liability is Penn's statement in her deposition that a supervisor who was not Kidder unfairly reprimanded her for failing to offer internet service to an elderly customer who did not own a computer.  (ECF 58-1 at 3–5.)  Even crediting Penn's speculative assessment of that incident as a reprimand related in some way to the sexual harassment or her filing of a lawsuit, rather than an unremarkable business interaction between a supervisor and an employee, it very clearly does not constitute conduct that is "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency."  Indeed, contrary to Penn's suggestion, numerous courts in West Virginia have found that extreme and outrageous conduct did not constitute an intentional infliction of emotional distress in various employment settings in which plaintiff-employees suffered far more significant conduct, including where employers have transferred, terminated, or pursued criminal prosecution against employees.  *See Suddreth v. Maurices Inc.*, 5:11-CV-00389, 2012 WL 275393, at *5 (S.D. W. Va. Jan. 31, 2012) (Berger, J.) (collecting cases).

Accordingly, the Court concludes that Citizens Telecom is entitled to summary judgment on Penn's intentional infliction of emotional distress claim.

## V.    CONCLUSION

For these reasons, the Court **GRANTS** Citizen Telecom's motion for summary judgment [ECF 58] in its entirety.  Therefore, it is **ORDERED** that this civil action be, and the same is hereby, **DISMISSED** and retired from the docket of the Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record.

28

ENTER:          February 26, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE